

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Case No. CR405-280 |
| | ) | |
| REGINALD JAVA BROWN, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Defendant has filed a motion to suppress evidence seized during a warrantless search of his residence on July 1, 2005. Doc. 34. The Court held an evidentiary hearing on the matter on May 23, 2006, at which time the government offered testimony from Chatham County Assistant District Attorney Jerome M. Rothschild, Jr., Savannah Chatham Metropolitan Police Department (SCMPD) Officer Rufus Brown; SCMPD Officer Claude Debnam; and Chatham Counter Narcotics Team (CNT) Agent Charles Guyer. The defendant testified in his own behalf regarding a Fourth Amendment waiver that he signed as part of a negotiated plea in a state

criminal case, as well as the circumstances surrounding his detention and the subsequent search of his residence. For the reasons that follow, the Court recommends that the motion to suppress be DENIED.

## I. BACKGROUND

Defendant entered into a negotiated plea agreement on February 8, 2005 in the Superior Court of Chatham County, in which the state agreed to reduce a malice murder charge pending against defendant to a charge of involuntary manslaughter.[1] As part of this negotiated plea agreement, defendant signed a document entitled "Fourth Amendment Waiver" that read in part:

> In consideration of the negotiated plea, and for the duration of the sentence . . ., any law enforcement officer (including probation officers) may search defendant's home, vehicle, person, papers, articles, and effects without a warrant, without consent, without probable cause, and without reasonable grounds or articulable suspicion.

Gov't. Ex. 2; Doc. 35. This document is a single sheet of paper attached to

---

[1] The charge of malice murder only carried one possible sentence, life in prison, while the manslaughter charge carried a possible sentence of one to ten years' imprisonment. The court imposed a ten-year sentence, with defendant to serve only the time he had been in custody (two years and ten months) and the remainder of the term to be probated. As defendant had already served his time, his probation period began immediately upon the imposition of the sentence.

the petition for negotiated plea, with the case name <u>State v. Reginald Brown</u> and the superior court case number appearing at the top along with the title, "Fourth Amendment Waiver."  <u>Id</u>.  The waiver is signed by defendant, defense attorney James B. Ashby, and Assistant District Attorney (ADA) Jerome Rothschild.[2]  <u>Id</u>.  The first page of the Petition for Negotiated Plea (or plea agreement) included the following special condition:  "Waiver of Fourth Amendment Rights for the Duration of This Sentence."  Gov't. Ex. 3.  This special condition was referenced by the prosecutor in open court during the guilty plea proceeding, and both the plea agreement and the attached waiver were tendered to the superior court judge during the plea hearing.  Gov't. Ex. 2, at 4; Doc. 37, Ex. B.

During the evidentiary hearing before this Court, defendant did not deny signing the Fourth Amendment waiver but testified that his state defense attorney never mentioned the waiver, much less explained its meaning or significance.  According to defendant, he simply signed

---

[2]At the evidentiary hearing in this case, ADA Rothschild testified that the negotiated plea agreement and Fourth Amendment waiver were entered into on the second day of defendant's second jury trial (an earlier trial of defendant on the same charges having resulted in a hung jury).  Rothschild explained that given the serious nature of defendant's criminal conduct, he insisted that defendant waive his Fourth Amendment rights while on probation as a condition of his plea.

3

whatever papers were presented to him with the understanding that he was receiving an "<u>Alford</u> plea" and would be sentenced to time served. The superior court judge did not refer to the waiver during the plea colloquy.

## II.  FACTS

On July 1, 2005, Officer Rufus Brown was patrolling Quincy Street in Savannah around 11:00 a.m. when he noticed a vehicle parked improperly on the wrong side of the street, facing oncoming traffic. The vehicle, which was protruding into the street some three to four feet off the curb, was obstructing one lane of traffic and still had its engine running and music "blaring." The vehicle sat directly in front of defendant's residence at 1912 Quincy Street. After observing two black males standing on the porch of that residence at a distance of only seven to ten yards from the vehicle, Officer Brown approached the residence and asked the two men if they knew who owned the vehicle. One of the men (later determined to be Stephen Hines) replied that it belonged to his cousin, who had taken his mother to the store. When Officer Brown asked why the cousin had not driven his car on this mission, Hines gave no response to the officer's

question. Defendant, who was standing beside Hines, apparently said nothing during this encounter.

Officer Brown returned to the vehicle and observed in plain view a large bag containing "a green leafy substance," which appeared to be marijuana. The officer then opened the door of the vehicle and immediately noticed the scent of marijuana. At this point, Officer Brown called for assistance and ran the registration of the vehicle, which was reported to be registered to Hines' father.[3] While examining the vehicle and checking on its registration, Officer Brown noticed that defendant and Hines would walk into the residence and then reappear on the porch. When the back-up units arrived, another officer alerted Officer Brown that one of the men (Hines) was running from the back door of the residence and fleeing the premises. The officers on the scene chased after Hines and followed him to his residence a few blocks from 1912 Quincy Street.

While most of the officers pursued Hines on foot, Officer Claude Debnam, who was patrolling with Officer Brown, endeavored to assist in

---

[3] At the time Officer Brown determined that the vehicle was registered to Hines' father, he did not know that either of the men on the porch was related to the registered owner. He questioned the two men because of the way the vehicle was positioned in the road with the engine running. Since no one else was near the vehicle, he assumed that the vehicle belonged to one of these two men.

the pursuit using his patrol car. Within five minutes, Officer Debnam saw defendant leaving 1912 Quincy Street in a Toyota Camry that had been parked in the driveway of the residence during the initial investigation of the illegally parked vehicle. Debnam immediately recognized defendant as the other man who was previously standing on the porch with Hines. Debnam turned his patrol car around and initiated a traffic stop on defendant about a mile from the residence. Debnam then detained defendant and took him back to the residence at 1912 Quincy Street, arriving there some ten minutes after initiating the traffic stop.

As Officer Debnam began to run a records check, defendant revealed that he was on probation. The dispatcher confirmed that defendant was in fact on probation and informed Debnam that a "Fourth Amendment waiver" was in effect. CNT Agent Charles Guyer, who was present at the residence when Debnam returned with defendant, spoke with defendant while he was still seated in the back of the patrol car. After discussing the fact that defendant had executed a waiver of his Fourth Amendment rights when he was placed on probation, Agent Guyer asked defendant if the officers could enter his residence and search his room for any weapons.

Defendant then gave his consent and furnished the agent with the front door key to the residence.[4] By this point, defendant's mother had arrived at the residence, and she told the officers where defendant's room was located.[5] Upon entering the residence and searching only defendant's bedroom, the officers recovered a quantity of cocaine, some weight scales and baggies, and some other items of evidence.

## II.   ANALYSIS

"A defendant is permitted to waive certain constitutional rights through a plea agreement, so long as the agreement was made knowingly and voluntarily." United States v. Young, 144 Fed. Appx. 33, 34 (11th Cir. 2005) (citing Parke v. Raley, 506 U.S. 20, 28-29 (1992); United States v. Brown, 117 F.3d 471, 476 (11th Cir. 1997)). In the instant case, defendant entered a "best interests" guilty plea pursuant to North Carolina v. Alford,

---

[4] During his testimony, defendant conceded that the agent had asked for consent to enter the residence but denied that he gave his consent. The Court finds this testimony not to be credible and specifically adopts the agent's testimony that defendant did in fact give his consent to the entry.

[5] Her description of the bedroom's location conflicted with the description furnished by defendant. The room he described to the officers contained some tires but no bed or clothes of any kind.

7

400 U.S. 25 (1970), whereby the charge of malice murder against him was reduced to involuntary manslaughter. Defendant received a ten-year sentence, but under the terms of the plea, defendant received credit for all the time he had served and was released on probation on the day he entered his plea.

As part of his plea agreement, defendant signed a Fourth Amendment waiver providing that "any law enforcement officer (including probation officers) may search defendant's home, vehicle, person, papers, articles, and effects without a warrant, without consent, without probable cause, and without reasonable grounds or articulable suspicion." Gov't. Ex. 3; Doc. 35. As noted above, this waiver was a separate document signed by defendant, his attorney, and ADA Rothschild. The petition for negotiated plea, which set forth the terms of the plea agreement, incorporated the waiver as a "special condition" of probation. Gov't. Ex. 3. Defendant, ADA Rothschild, and defendant's attorney each signed this plea agreement, which was specifically adopted by the superior court judge. Id. The order of Final Disposition entered by the superior court imposed the agreed upon sentence and specifically referenced the attached "4th Amendment Waiver." Id.

Defendant claims the waiver is invalid, however, because he did not make a knowing and intelligent waiver of his rights. Doc. 34. According to defendant, "the meaning of the waiver form and the consequences of [his] signature on it were never explained to him." Id. at 5. Defendant claims that he "was given several pieces of paper at the time of his agreeing to his plea and was hurriedly told to sign them." He further points out that the record of the plea hearing shows that the trial judge never mentioned the waiver during the plea colloquy. Id.

The constitutionality of a Fourth Amendment waiver imposed as a condition of probation has been upheld by the Supreme Court and, more recently and in a more expansive ruling, by the Seventh Circuit Court of Appeals. In United States v. Knights, 534 U.S. 112 (2001), a California court had sentenced Knights to probation and imposed a condition that he "submit his . . . person, property, place of residence, vehicle, personal effects, to search at anytime, with or without a search warrant, warrant of arrest or reasonable cause by any probation officer or law enforcement officer." Id. at 114. After developing reasonable suspicion to believe that Knights was engaged in acts of vandalism and arson, a detective aware of

the court-imposed search condition conducted a warrantless search of Knights' apartment and found incriminating evidence that led to his federal indictment. In a unanimous decision (with one concurrence), the Court reversed the Ninth Circuit and held that the warrantless search, authorized as a condition of his probation and supported by reasonable suspicion, was reasonable within the meaning of the Fourth Amendment.[6]

In United States v. Barnett, 415 F.3d 690 (7th Cir. 2005), Barnett negotiated a plea with the government and, pursuant to the plea agreement, was sentenced to a year of "Intensive Probation Supervision" that required him to "submit to searches of [his] person, residence, papers, automobile and/or effects at any time such requests are made by the Probation Officer, and consent to the use of anything seized as evidence in Court proceedings." Id. at 691. Barnett later moved to suppress the evidence found during a search of his home conducted pursuant to the search condition. Considering the question left open in Knights, Judge Posner, writing for the panel, reasoned that Barnett should be held to the

---

[6]The Knights court found it unnecessary to decide whether Knights' "acceptance of the search condition" constituted consent to a blanket waiver of his constitutional rights, such that the search would have been upheld even in the absence of a showing that Knights was reasonably suspected to be engaged in criminal activity. 534 U.S. at 118.

contractual bargain that he struck with the government in the plea agreement. Thus, the Court concluded that the blanket waiver of Fourth Amendment rights which Barnett agreed to as a condition of his probation "alone" justified the warrantless search of his apartment, without any showing that the searching officers possessed a reasonable suspicion of criminal activity at the time of the search. Id. at 691-92.

Relying principally upon the Knights and Barnett opinions, the government contends that the Fourth Amendment waiver which defendant signed and which the superior court imposed as a condition of his probation is enforceable against him and that, given the officers' reasonable suspicion that defendant was engaged in criminal activity, the warrantless search of his residence was entirely justified. There is, however, a noteworthy and distinguishing feature to Knights and Barnett that is missing in the present case. In Knights, the Supreme Court emphasized that "Knights was *unambiguously informed* of" the search provision imposed by the sentencing court as a condition of his probation. Knights, 534 U.S. at 119 (emphasis added). Similarly, in Barnett the Court noted that Barnett's lawyer "acknowledged having bargained for" a term of intensive probation,

"which Barnett preferred to a prison sentence," and that Barnett had made a *"knowing and intelligent"* waiver of his Fourth Amendment rights as a condition of his plea bargain. Id. (emphasis added).

In the case now before this Court, there is no consensus among the parties that defendant was "unambiguously informed" that by entering a guilty plea he was waiving his right to contest the validity of any search performed by law enforcement officers during the seven-year two-month period of his probation. Instead, defendant insists that his waiver was not "knowing and intelligent." Of course, the government disputes defendant's assertion, pointing to his signature on the waiver itself, on the plea agreement which referenced the "waiver of Fourth Amendment rights for the duration of this sentence," and on the superior court's judgment which referenced the attached "4th Amendment waiver." Gov't. Ex. 3. Nevertheless, the record before the Court does not contain any evidence specifically refuting defendant's testimony that he merely signed what was placed in front of him without any understanding of its meaning and that neither the prosecutor, his attorney, or the trial judge ever defined or explained the terms "Fourth Amendment" and "waiver" or made certain

that he understood precisely what he was waiving.[7]

So, we are left with a defendant who contends that he simply signed a paper put in front of him without understanding its meaning or import and with a transcript of a guilty plea proceeding that does not specifically refute that contention. This Court, however, need not decide whether the record in this case is sufficiently distinguishable from the record presented in Knights and Barnett to call into question the validity of the waiver executed by the defendant or the probation condition imposed by the superior court. It is unnecessary for the Court to plumb this question for, as the government suggests, there is an independent basis for upholding the search of defendant's residence that does not depend upon the contested search condition.

---

[7]Perhaps the government could have subpoenaed defendant's state defense attorney for the purpose of refuting defendant's claim that he was "hurriedly" presented papers to sign and was never informed of their meaning and significance. Or perhaps the state probation officer could have been called to testify that during the post-sentencing interview he focused defendant's attention on the Fourth Amendment waiver and had defendant acknowledge his understanding that he had agreed to the warrantless and suspicionless search of his person, residence, and effects as a condition of his probation. No such testimony was forthcoming at the evidentiary hearing, however, and the Court is therefore left with a record that lacks the clarity of the record presented in Knights and Barnett.

The testimony at the evidentiary hearing established that defendant's initial seizure by the officers was supported by reasonable suspicion to believe that he was connected to the marijuana found in the vehicle parked directly in front of his residence. The facts confronting the officers were these: a vehicle, with its engine running and radio blaring, was unlawfully parked directly in front of defendant's residence at 1912 Quincy Street; two men were standing on the porch of that residence only yards away from that vehicle; one of the porch occupants gave a highly questionable explanation for why the vehicle was parked there; a large bag of marijuana was soon spotted inside the vehicle; the two porch occupants entered the residence while this investigation was in progress and one of the men stepped back onto the porch briefly before fleeing the scene on foot; and while officers were engaged in chasing the other porch occupant, defendant chose this time to depart the residence in another vehicle. Reasonable suspicion need not rest upon certainties or even probabilities but instead depends upon a lesser level of suspicion that cannot be "'reduced to a neat set of legal rules.'" Ornelas v. United States, 517 U.S. 690, 695-96 (1996) (quoting Illinois v. Gates, 462 U.S. 213, 232 (1983)). A reasonable suspicion

determination must be based on commonsense judgments and inferences about human behavior. United States v. Cortez, 449 U.S. 411, 418 (1981). Here, the totality of the circumstances were such that the officers had a "minimal level of objective justification for the belief that the [defendant was] engaged in unlawful conduct." United States v. Blackman, 66 F.3d 1572, 1576 (11th Cir. 1995). They were therefore entitled to conduct a brief investigatory stop in order to confirm or dispel their suspicions.

Once the defendant was returned to the scene, he was asked by CNT Agent Guyer if he would permit the officers to enter his residence in order to search for weapons or drugs. As noted earlier, the Court finds that defendant freely gave his consent to such a search.[8]

In sum, the officers were perfectly justified in conducting an investigatory stop of the defendant based upon their reasonable suspicion that he was engaged in criminal activity. Further, they did not require a search warrant before entering the residence, because defendant consented to their entry. Thus, even if defendant did not effectively waive his Fourth

---

[8] Although before seeking defendant's consent the agent mentioned that defendant had waived his Fourth Amendment rights as a condition of his probation, defendant does not contend that this discussion coerced or pressured him into consenting. Instead, defendant testified that he refused to give his consent and forbade the officers' entry.

Amendment rights at the time he was sentenced to a term of probation, the officers' entry into his residence was nevertheless lawful and violated none of his constitutional rights. Accordingly, defendant's motion to suppress should be DENIED.

**SO REPORTED AND RECOMMENDED** this /st day of June, 2006.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA