FILED
U.S. DISTRICT COURT
SAVANNAH DIV.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**SAVANNAH DIVISION**

2006 JUL -3  AM 10: 52

CLERK _____
SO. DIST. OF GA.

UNITED STATES OF AMERICA      )
                             )
                             )
vs.                          )   Case No. CR405-280
                             )
REGINALD JAVA BROWN,         )
                             )
            Defendant.       )
_____)

## O R D E R

After a careful review of the file in this case, the Court
concurs in part with the Magistrate Judge's Report and
Recommendation to which objections have been filed.  (Doc. 42.)
Accordingly, the Report and Recommendation of the Magistrate Judge
is adopted as the opinion of the Court with one caveat.

### BACKGROUND[1]

On July 1, 2005, Officer Rufus Brown observed a vehicle
improperly parked in front of the residence located at 1912 Quincy
Street in Savannah, Georgia.[2]  The vehicle was obstructing one lane
of traffic and still had its engine running and music playing.  The
vehicle was parked directly in front of Defendant's residence.  The
officer noticed two black males standing on the porch of the
residence and asked them if they knew who owned the vehicle.  One

---

[1]The Court specifically adopts the facts of this case as
laid out in the Report and Recommendation.  Accordingly, this
recount of those facts is not exhaustive, but rather a summary of
those occurrences pertinent to this Order.

[2]This home was later determined to be Defendant's place of
residence.

of the men (later determined to be Stephen Hines) replied that it belonged to his cousin, who had taken his mother to the store.[3] When the officer inquired as to why the cousin had not driven his car on this errand, Mr. Hines did not answer.

Officer Brown then returned to the vehicle where he observed what appeared to be a large bag of marijuana. Upon opening the door of the vehicle, the officer noticed the scent of marijuana. He called for assistance and began checking the vehicle's registration. While Officer Brown was examining the vehicle, he noticed that Defendant and Hines would walk into the residence and then reappear on the porch. After the back-up units arrived, the officers saw Mr. Hines exit the back door of the residence and flee the premises. Several of the officers on the scene gave chase.

Officer Claude Debnam joined the pursuit in his patrol car. Minutes after Mr. Hines fled, Officer Debnam saw Defendant leaving the street in a Toyota Camry that had been parked in the driveway of the residence. He initiated a traffic stop, detained Defendant, and took him back to the residence. As the officer began to run a records check, Defendant revealed that he was on probation. The dispatcher confirmed this and told the officer that a "Fourth Amendment waiver" was in effect.

---

[3]The officers later identified the second man on the porch as Defendant Brown.

CNT Agent Charles Guyer, who was present at the residence when Debham returned with Defendant, spoke with Defendant while he was still seated in the back of the patrol car. After discussing the fact that Defendant had executed a waiver of his Fourth Amendment rights, the agent asked Defendant if the officers could enter his residence and search his room for any weapons or drugs. The Government contends that Defendant gave his consent and furnished the agent with the front door key to the residence. Defendant, however, claims that he did not consent. Alternatively, he maintains that any consent given was involuntary, coerced and the product of duress.

By this point in the officers' investigation, Defendant's mother had arrived at the residence. She confirmed the fact that she and Defendant both resided in the house and directed the officers to Defendant's room where they recovered a quantity of cocaine, some scales, plastic baggies, and other items of evidence.

On October 5, 2005, the grand jury issued an Indictment charging Defendant with one count of possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1). Defendant pled not guilty. On March 29, 2006, Defendant filed an uncontested motion to file an untimely motion to suppress the evidence seized during the warrantless search of his residence. At a motions hearing held on April 14, 2006, the Magistrate Judge granted Defendant's motion to file the out of time motion. Shortly thereafter, Defendant filed his motion to suppress. The Government

3

responded.   While the motion was still pending, this Court held a
pretrial conference with counsel for the Government and the defense
present.   At that conference, the Court scheduled this case for
jury trial beginning on July 12, 2006.

Approximately two weeks after this conference, the Magistrate
Judge held an evidentiary hearing on the motion to suppress.  After
hearing testimony from both sides and reviewing the available
briefs, the Magistrate Judge issued a Report and Recommendation,
recommending that the motion to suppress be denied.  Specifically,
Magistrate Judge Smith found that "defendant's initial seizure by
the officers was supported by reasonable suspicion to believe that
he was connected to the marijuana found in the vehicle parked
directly in front of his residence."  (Doc. 42 at 14.)   Further,
the Magistrate Judge found that Defendant freely gave his consent
to such a search.  (Id. at 15.)   In so holding, Magistrate Judge
Smith noted that "before seeking defendant's consent the agent
mentioned that defendant had waived his Fourth Amendment rights as
a condition of his probation, [but] defendant does not contend that
this discussion coerced or pressured him into consenting."  (Id.)

Subsequent to the issuance of the Report and Recommendation,
Defendant filed two sets of objections.   The first set,
"Defendant's Response to the . . . Report and Recommendation,"
addressed the validity of the Fourth Amendment Waiver executed by

4

Defendant as a part of his plea in a previous state case.[4]   The second set of objections, however, touched on multiple issues, one of which is presently of concern.   Specifically, Defendant objects to the Magistrate Judge's finding that Defendant did not contend that any consent which may have been given to the search of his room was involuntary.   Because the Court agrees with Defendant that he properly raised this issue in his supplemental brief filed in support of his motion to suppress, the Court will address the voluntariness of his consent.

## ANALYSIS

"While the Supreme Court has repeatedly stressed that reasonableness is the ultimate touchstone for addressing the constitutionality of a search under the Fourth Amendment, the High Court has also recognized that a warrant is usually required where a search is undertaken by law enforcement officials to discover evidence of criminal wrongdoing."   United States v. Gonzalez, 71 F.3d 819, 825 (11th Cir. 1996)(internal citations and quotations omitted).   Thus, the general rule in the criminal context is that warrantless searches are per se unreasonable under the Fourth Amendment, subject only to a few specifically established and well-delineated exceptions.   United States v. Sweetenburg, 2006 WL 1736826, *1 (11th Cir. 2006)(citing Gonzalez, 71 F.3d at 825.   In

_____

[4]As explained more fully in the Report and Recommendation, if the Court determines that Defendant's consent was valid, then the Court need not address the validity of the Fourth Amendment waiver.

the instant case, the applicable exception is a consensual search, which is constitutional if it is voluntary. Id. (citing Gonzalez, 71 F.3d at 827); United States v. Acosta, 363 F.3d 1141, 1151 (11th Cir. 2004). "In order to be voluntary, [consent] must be the product of a free and unconstrained choice." United States v. Francis, 140 Fed. Appx. 184, 187 (11th Cir. 2005). "The government bears the burden of proving the voluntariness of the consent." United States v. Bentley, 151 Fed. Appx. 824, 827 (11th Cir. 2005)(citing United States v. Chemaly, 741 F.2d 1346, 1352 (11th Cir. 1984).

"The determination as to whether a suspect's consent is voluntary is not susceptible to neat talismanic definitions; rather, the inquiry must be conducted on a case-by-case analysis." Francis, 140 Fed. Appx. at 187. In determining whether consent was freely given, courts should attempt to strike a balance between a suspect's right to be free from coercive conduct and the legitimate need of the government to conduct lawful searches. Id. Relevant factors in determining voluntariness, none of which is dispositive, include (1) the voluntariness of the defendant's custodial status, (2) the presence of coercive police procedure, (3) the extent and level of the defendant's cooperation with police, (4) the defendant's awareness of his right to refuse to consent to the search, (5) the defendant's education and intelligence, and (6) the defendant's belief that no incriminating evidence will be found. Chemaly, 741 F.2d at 1352.

Defendant argues that he was "originally detained some distance from where the search took place after a traffic stop at gunpoint, was then handcuffed by the police, placed in a police squad car, returned to the house where the search eventually took place, and then detained for more than one hour before an alleged consent to search was given." (Doc. 37 at 3.) Further, Defendant asserts that he was not told that he was free to leave or that he had the right to refuse the search. Moreover, he maintains that he was told that the officer's had permission to search because of a signed waiver. He contends that the show of force by the police, when combined with the length of his detention and the other circumstances, created a situation in which no consent given could have been voluntary.

At the hearing, however, Officer Debnam painted a slightly different picture of the circumstances surrounding Defendant's consent. Although he agreed with Defendant that the traffic stop occurred several streets from the residence, that he approached the vehicle with his gun drawn and subsequently handcuffed Defendant, placed him in a squad car and returned to the residence, he disagrees with Defendant's assessment of the passage of time.[5] The officer estimates that Defendant was returned to the residence within ten minutes of the initiation of the traffic stop.

---

[5]The officer claims that his gun was holstered when he handcuffed Defendant. It appears that no other officers drew their guns in the presence of Defendant from the time he was handcuffed until his consent to search was given.

Immediately after the pair arrived at the residence, the officer began his discussions with the probation officer and the dispatch office. It seems that the two conversations were quite brief and were completed within ten to fifteen minutes. Consequently, according to the officer, the entire encounter lasted approximately twenty to twenty-five minutes.

Further, it appears from the evidence presented at the hearing that CNT Agent Charles Guyer spoke with Defendant while Officer Brown was conversing with the dispatch and probation offices. After the officers realized that Defendant was subject to a Fourth Amendment waiver, Agent Guyer explained the repercussions of such a waiver to Defendant and obtained Defendant's consent to search the premises.

With those facts in mind, the Court now turns to the factors set out by the Eleventh Circuit Court of Appeals for the assessment of voluntariness. The application of three of the factors is immediately ascertainable. First, the Court finds that Defendant's custodial status weighs in favor of a finding that the consent to search was invalid, as his detention was clearly involuntary. A second factor, Defendant's education and intelligence, appears to weigh in the opposite direction. As Agent Guyer testified at the evidentiary hearing, Defendant did not appear to be under the influence of drugs or alcohol and seemed to understand the questions posed to him. Indeed, the agent indicated that Defendant answered every question asked and appeared to understand the

colloquy regarding the Fourth Amendment waiver. Thus, it seems that Defendant is of average intelligence and was not unduly confused by the occurrences on the day in question. However, a third factor, the defendant's belief that no incriminating evidence will be found, seems to weigh in the Defendant's favor.

The next factor, the presence of coercive police procedure, weighs in favor of the Government. Although Officer Debnam drew his gun as he approached Defendant's car after initiating the traffic stop, he immediately holstered the weapon before handcuffing Defendant. After Defendant was handcuffed, he was placed and remained in the backseat of the officer's patrol car until the allegedly involuntary consent was obtained. From the testimony regarding the conversations between the officers and Defendant, it appears that Defendant was never threatened, badgered, interrogated or otherwise coerced. Moreover, he was not physically threatened. Thus, it appears that Defendant did not make his choice under duress caused by coercive policy conduct.

Another factor, the extent and level of Defendant's cooperation with police, also weighs in favor of a finding that the consent was voluntary. According to testimony at the evidentiary hearing, Defendant volunteered his status as a parolee. Further, he freely admitted that he and his mother lived together in the residence. Moreover, he provided the officers with keys to the house. Together, these facts indicate that Defendant was cooperative with the officers which suggests that his consent was freely given.

The final factor, Defendant's awareness of his right to refuse consent, however, is more involved.  It is possible that Defendant did not understand that he was free to refuse to consent to the search.  Shortly before asking Defendant if the officers could search his room, the agent told Defendant that the officers knew that Defendant had signed a waiver in a previous case.  This waiver, Defendant was told, gave the officers the right to go into his residence to check for drugs or illegal narcotics.  Having just been told about the wavier, it is possible that Defendant did not fully understand that he had the right to refuse consent. Nevertheless, Defendant's knowledge of his right to refuse consent is only one factor to be taken into account.  <u>Bentley</u>, 151 Fed. Appx. at 828 ("Though knowledge of the right to refuse consent is one factor to be taken into account, the government need not establish such knowledge as the sine qua non of an effective consent.").  Thus, this factor is not dispositive.  <u>Id.</u>  When this factor and others weighing in favor of Defendant's contentions are compared with the lack of intimidating and coercive tactics employed by the police, Defendant's cooperation, intelligence, and familiarity with the criminal justice system, it appears that his consent was voluntary.

### CONCLUSION

This Court concurs in part with the Report and Recommendation of the Magistrate Judge.  Specifically, this Court adopts all of the Magistrate Judge's findings of fact and determinations of law,

save his conclusion that Defendant does not contest the validity of his consent to search.   After careful consideration, the Court finds that Defendant's consent was voluntary.   Accordingly, Defendant's motion to suppress is **DENIED**.

SO ORDERED, this *3rd* day of July, 2006.

WILLIAM T. MOORE, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA